## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **RICHARD L. CARPENTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIV-06-631-R** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>O R D E R</u>

Before the Court are the Findings and Recommendation of United States Magistrate Judge Shon T. Erwin entered May 8, 2007 [Doc. No. 18] and Plaintiff's Objection to the Findings and Recommendation filed May 29, 2007 [Doc. No. 19].  The Magistrate Judge concluded that the ALJ properly considered the opinions of Plaintiff's treating physician and properly evaluated the medical evidence; that the ALJ properly formulated Plaintiff's residual functional capacity (RFC) and that Plaintiff failed to identify the allegedly "undisputed and overwhelming medical evidence" indicating Plaintiff had not retained the RFC to engage in substantial gainful activity; and that the ALJ properly evaluated Plaintiff's credibility and complaints of disabling pain.  The Magistrate recommended that the decision of the Commissioner denying Plaintiff's application for disability insurance benefits be affirmed.

In his Objection, Plaintiff takes issue with all three of these conclusions by the Magistrate Judge.  First, Plaintiff asserts that the ALJ merely stated that he gave the opinion of Plaintiff's treating physician, Dr. Reynolds, controlling weight while only acknowledging

those parts of Dr. Reynolds' findings that supported the ALJ's opinion that Plaintiff is not disabled.  Plaintiff suggests that the ALJ ignored Dr. Reynolds' statements that the Plaintiff has "difficulty walking," suffers from "a fairly severe cervical myelopathy," has "difficulty with coordination," has a "relatively fixed neurological deficit that is going to be a problem for him in the future," "continues to demonstrate four extremity spasicity as well as hypesthesia of the hands and legs" and has "problems with rapidly altering movement." Plaintiff also asserts that the ALJ merely dismissed Dr. Harper's opinion that Plaintiff is "permanently and totally disabled" by the type of boilerplate language frowned upon by the Tenth Circuit in *Barnett v. Apfel*, 231 F.3d 687 (10th Cir. 2000).  In conclusion on this point, Plaintiff asserts that the ALJ did not apply the correct legal standards in evaluating the medical evidence and committed reversible error by failing to provide specific, legitimate reasons for rejecting opinions and assessments of Plaintiff's impairments in the medical evidence, citing *Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1991) and *Drapeau v. Massanari*,  255 F.3d 1211, 1213 (10th Cir. 2001).

With respect to Plaintiff's residual functional capacity (RFC), Plaintiff asserts that the medical evidence establishes that he has the limitations included in his counsel's hypothetical questions to the vocational expert and that the ALJ's hypothetical questions improperly ignored medically supported limitations, constituting reversible error, citing *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991).  For example, Plaintiff points out that the ALJ did not include any limitations relating to Plaintiff's use of his hands in his RFC

determination, yet Doctors Reynolds, Harper and Maldonado all made findings concerning hand limitations.

With respect to the ALJ's credibility determination, Plaintiff asserts that the Magistrate Judge did not fully consider Plaintiff's argument directed to this issue. Plaintiff states that the ALJ didn't completely analyze the medical evidence that bore on this issue, in particular that that supported Plaintiff's testimony and credibility, and instead supported his credibility determination with a list of activities Plaintiff performs, contrary to *Thompson v. Sullivan*, 987 F.2d 1482, 1489-90 (10th Cir. 1993).

Contrary to Plaintiff's argument, in his Evaluation of the Evidence, at page 4 of his Decision, the ALJ specifically noted Dr. Reynolds' finding on March 9, 1998 that the claimant "continued to demonstrate four extremity spasicity as well as hypesthesia of the hands and legs" and "had problems with rapidly alternating movements and coordination." Tr. at 313. Likewise, the ALJ considered that Dr. Reynolds' subsequent treatment records indicated that the claimant "had difficulty walking." *Id*. The ALJ further took note of the fact that Dr. Reynolds' treatment notes of October 27, 1998 indicated that the claimant "continued to have evidence of spastic quadriparesis although it did appear to be stable." *Id. See* Tr. at 317. The ALJ also specifically noted Dr. Reynolds opinion that "the claimant would have some permanent, long-term myelopathic changes that would interfere with returning to his previous line of work." Tr. at 317. The ALJ expressly gave Dr. Reynolds' opinion controlling weight, but observed that *subsequent* examinations by two consulting neurologists "noted no neurological findings except for mild gait impairment" *id.*, and that

one of those neurologists, Dr. Lawton, who examined the Plaintiff on February 17, 2000, "could find no evidence of spasicity or any other residual of the claimant's spinal surgery." *Id*. The ALJ, in specifically concluding that Dr. Reynolds' opinion was "not inconsistent with the opinions of the other two neurologists," obviously considered the findings and opinions of the two neurologists who examined Plaintiff on November 22, 1999 (Dr. Landstrom) and February 17, 2000 (Dr. Lawton) to reflect an improvement in the Plaintiff's neurological condition over time, post-surgery, rather than a difference in opinion with Dr. Reynolds, Plaintiff's treating physician. The Court cannot conclude that the ALJ ignored or disregarded any of Dr. Reynolds' findings or opinions or that the ALJ did not apply the correct legal standards in evaluating the medical evidence. Nor can the Court conclude that the ALJ merely "dismissed" Dr. Harper's opinion that the claimant was "permanently and totally economically disabled." The ALJ specifically discussed not only this opinion, Tr. at 313, but the fact that "Dr. Harper rated the claimant [as having] 66.5% partial impairment of the whole person from the neck" and having "temporary total disability from January 1998 until November 24, 1998." *Id*. The ALJ properly considered the fact that Dr. Harper had evaluated the claimant for workers compensation purposes. Tr. at 316. He did not dismiss but expressly considered Dr. Harper's statement that the Plaintiff "is permanently and totally economically disabled," *id*.; he merely correctly indicated that the issue of "total economic disability" or an inability to engage in substantial gainful activity is reserved to the Commissioner of the Social Security Administration and, therefore, Dr. Harper's opinion was not entitled to controlling weight. *See id. Cf. Castellano v. Secretary of Health and Human*

*Services*, 26 F.3d 1027, 1029 (10th Cir. 1994) (treating physician's opinion on ultimate issue, that claimant was disabled, is not entitled to controlling weight because final responsibility for determining that issue is reserved to the Commissioner).

The Court has independently reviewed all of the medical evidence in the administrative record. There are no medical findings or opinions that dictate or support the conclusion that Plaintiff "could only stand for 30 minutes at a time for a maximum of two hours out of an eight hour day," *see* Tr. at 395 (Plaintiff's counsel's hypothetical question to the vocational expert), and, in any event, the vocational expert (VE) testified that the Plaintiff could still perform all of the jobs the VE had previously testified he could perform because "the jobs would accommodate a sit/stand position." *Id.* Likewise, the Court could find no medical evidence in the record to support a limitation that the Plaintiff "could only lift and/or carry ten pounds occasionally and smaller weights frequently." Tr. at 395 (Plaintiff's counsel's hypothetical question to the VE). Indeed, the medical evidence indicates that the Plaintiff "was strong to direct motor testing," Tr. 170 & 313 in March of 1998, had "very good" strength in June of 1998, Tr. at 167, had normal hand grip strength in August of 1998, Tr. at 206 & 313, and no weakness in the upper extremities, Tr. at 199, and "good hand-grip strength" in September of 1999. Both Dr. Landstrom and Dr. Lawton, consulting neurologists, indicated Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds in their Physical Residual Functional Capacity Assessments. Tr. at 216 & 228. Although Dr. Harper stated that the Plaintiff's grip was considerably less than excepted [sic] for a man of this age and activity," Tr. at 193, his

finding is inconsistent with those of all of the other physicians who examined the Plaintiff and, in any event, does not indicate that the Plaintiff cannot lift and/or carry 20 pounds occasionally and 10 pounds frequently.  With respect to "fine finger dextrous activity," *see* Tr. at 396 (Plaintiff's counsel's hypothetical question to the VE), the "overwhelming medical evidence" does not support a limitation for fine motor function of the hands.  Dr. Reynolds did note upon examination in July of 1998 that the Plaintiff had "some clumsiness of grip and fine motor function," Tr. at 177, and Dr. Harper observed "considerable clumsiness of the hands" in November of 1998.  Tr. at 194.  Dr. Maldonado observed that the Plaintiff was "unable to oppose his thumb with the fourth or fifth digits on either hand" in September of 1999, Tr. at 2000, but Dr. Maldonado *also* specifically found that Plaintiff had "normal fine manipulation."  *Id*.  By 1999, Plaintiff's fine or manipulative motor function of his hands was certainly normal.  In November of 1999, Dr. Landstrom found that Plaintiff's "[f]ine movements were preserved in both hands" and observed Plaintiff "to be able to manipulate small objects without difficulty."  Tr. at 214.  In February of 2000, Dr. Lawton reported that Plaintiff performed "[r]apid alternating movements . . . in a slow clumsy fashion" but that that "was not at all what [he] saw when [Plaintiff] manipulated his clothing."  Tr. at 226.  Dr. Lawton expressed his opinion that the clumsiness with which Plaintiff performed rapid alternating movements was not "organic."  *Id*.  Hence, the ALJ's failure to include a limitation in Plaintiff's RFC for inability to perform fine motor functions with his hands or "fine finger dextrous activity" was not error but supported by substantial evidence in the record.

The ALJ properly assessed the credibility of Plaintiff's complaints of disabling pain after first concluding that Plaintiff had an impairment supported by objective medical evidence that could reasonably be expected to produce some pain.  The ALJ considered the medical evidence, the non-medical objective evidence and Plaintiff's subjective testimony, finding that the claimant's allegations regarding his limitations [back pain 24/7, numbness and tingling in his arms and legs, muscle spasms, inability to sit for more than 30 minutes, inability to stand or walk for more than 15 minutes, inability to lift two gallons of milk, etc.] are not totally credible for the reasons set forth in the body of the decision."  Tr. at 319.  In the body of the decision, the ALJ considered not only the daily activities Plaintiff performed, which the ALJ found were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations," Tr. at 315, but also the facts that Plaintiff "takes no prescription drugs, only over the counter drugs," has no treating physician because he has no income and had not sought regular ongoing medical treatment for his pain and alleged limitations after his release by Dr. Reynolds in October of 1998 until November of 2000.  Tr. at 315.  The ALJ also considered the opinion of Dr. Reynolds, Plaintiff's treating physician, that Plaintiff could probably do better in his physical exertion.  *Id*.  Finally, the ALJ considered the "paucity of truly objective findings upon his neurological examination" by Dr. Landstrom, Tr. at 314; *see* Tr. at 214, and the absence of any neurological "evidence of spasicity or any other residual of [Plaintiff's] spinal surgery" or organic explanation for jerkiness and the alleged absence of sensation in Plaintiff's legs and feet reported by Dr. Lawton.  Tr. at 314; *see* Tr. at 226.  Thus, the ALJ properly considered the factors set forth

in *Hargis v. Sullivan*, 945 F.2d 1482, 1488 (10th Cir. 1991) and set forth the specific evidence he relied on in evaluating Plaintiff's credibility. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Finally, the Court agrees with the Magistrate Judge that substantial evidence in the record supports the ALJ's credibility determination.

In accordance with the foregoing, the Findings and Recommendation of the Magistrate Judge [Doc. No. 18] are ADOPTED in their entirety and the decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits is AFFIRMED.

**It is so ordered this 14th day of June, 2007.**

David L. Russell

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE